IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| HAFSAT ABIOLA, individually and on behalf of the Estates of M.K.O. ABIOLA and ALHAJA KUDIRAT ABIOLA, ANTHONY ENAHORO, and ARTHUR NWANKWO, <br>     Plaintiffs, <br><br> vs. <br><br> GEN. ABDUSALAMI ABUBAKAR, <br><br>     Defendant. | Case No. 02 C 6093 |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

The plaintiffs in this case are a group of Nigerian nationals who allege that the defendant, General Abdusalami Abubakar, committed grave human rights abuses while a member of the military regime that ruled Nigeria from November 1993 to May 1999. Plaintiffs have sued Abubakar under the Alien Tort Claims Act (ATCA) and Torture Victim Protection Act (TVPA), 28 U.S.C. § 1350. The case is before the Court on Abubakar's motion for summary judgment. For the following reasons, the Court denies the motion.

### Discussion

The Court presumes familiarity with the facts of the case, which are detailed in the Court's previous opinion, *Abiola v. Abubakar*, 267 F. Supp. 2d 907, 908-09 (N.D. Ill. 2003), and the Seventh Circuit's subsequent opinion. *Enaharo v. Abubakar*, 408 F.3d 877, 878-80 (7th Cir. 2005).

On a motion for summary judgment, the Court must consider the evidence and draw all reasonable inferences in favor of the plaintiffs, the non-moving parties in this case. FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Summary judgment is "the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Schacht v. Wisc. Dept. of Corr.*, 175 F.3d 497, 504 (7th Cir. 1999).

Abubakar argues that summary judgment is proper for three reasons: lack of standing, the act of state doctrine, and exhaustion of remedies under the TVPA.[1] The Court previously discussed the standing issue. In an August 25, 2003 ruling, we held that Abiola's claims on behalf of her mother and father were defective insofar as Abiola failed to demonstrate that she was the executor or administrator of her parents' estates. The Court did not dismiss the complaint, however, electing instead to allow Abiola time to establish her capacity to sue under Illinois law. The Court originally gave Abiola a deadline of October 23, 2003 to make such a showing, but then extended that deadline to January 15, 2004. On December 8, 2003, the Court stayed all proceedings in the case pending Abubakar's appeal of the Court's June 17, 2003 ruling. When the stay was lifted on June 14, 2005, Abiola had yet to establish her capacity to sue on behalf of her parents' estates. Nonetheless, it would be unfair to dismiss her suit in view of the fact the case was stayed prior to the Court's last deadline. For this reason, the Court extends to January 6, 2006 the time for Abiola to establish her capacity to sue on behalf of her parents' estates.

---

[1] Abubakar also raises two other arguments related to forum non conveniens and head of state immunity. The Court previously ruled on (and declines to revisit) these issues. *Abiola*, 267 F. Supp. 2d at 918.

We next consider Abubakar's argument under the act of state doctrine that any alleged acts of violence attributable to Abubakar were committed in his official capacity as a member of the PRC, one of the former ruling bodies of Nigeria. "The traditional formulation of the act of state doctrine is that . . . . 'Every sovereign State is bound to respect the independence of every other sovereign State, and the courts of one country will not sit in judgment on the acts of the government of another done within its own territory.'" *Alfred Dunhill of London, Inc. v. Republic of Cuba,* 425 U.S. 682, 691 n. 7 (1976) (quoting *Underhill v. Hernandez,* 168 U.S. 250, 252 (1897)). The doctrine is a flexible one designed to prevent judicial pronouncements on the legality of the acts of foreign states which could embarrass the Executive Branch in the conduct of foreign affairs. *See Banco Nacional de Cuba v. Sabbatino,* 376 U.S. 398, 428 (1964); *Alfred Dunhill of London, Inc.,* 425 U.S. at 697.

To determine whether the act of state doctrine precludes judicial intervention in a particular controversy, the Court balances a number of policy considerations. *See Sabbatino*, 376 U.S. at 428. Two important factors include whether the international community has established a consensus regarding the activity in question, *id.*, and whether the resolution of the case will "likely impact on international relations," or "embarrass or hinder the executive in the realm of foreign relations." *Allied Bank Int'l v. Banco Credito Agricola de Cartago*, 757 F.2d 516, 520-21 (2d Cir. 1985).

The "international consensus" factor strongly favors the plaintiffs. Torture and extrajudicial murder have long been condemned by international law. Indeed, they are violations of *jus cogens* norms, which are binding on nations even if they do not agree to them. As a result, the international consensus is strong in renouncing such actions. *See Doe I v. UNOCAL Corp.*,

395 F.3d 932, 959 (9th Cir. 2002); *Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 244 F. Supp. 2d 289, 345 (S.D.N.Y. 2003).

The second factor also weighs in favor of the plaintiffs. In *Sabbatino*, the Court said, "The balance of relevant considerations may . . . be shifted if the government which perpetrated the challenged act of state is no longer in existence . . . for the political interest of this country may, as a result, be measurably altered." 376 U.S. at 428, 84 S.Ct. at 941. In other words, judicial involvement in a particular controversy will have less effect on foreign relations where the government in question has been removed. In this case, the Nigerian millitary regime led in part by Abubakar has been replaced by a democratically elected government. *See Wiwa v. Royal Dutch Petroleum Co.*, No. 96 C 8386, 2002 WL 319887, at * 28 (S.D.N.Y. 2002) (declining to invoke the act of state doctrine because Nigerian military government had been replaced). Consequently, the likelihood of embarrassment for the executive branch is measurably reduced. For these reasons, the Court holds the act of state doctrine inapplicable.

We move now to Abubakar's last argument: that plaintiffs failed to exhaust their remedies in Nigerian courts. The ATCA gives district courts "original jurisdiction of any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States." 28 U.S.C. § 1350. Despite its language, the statute is not merely jurisdictional; the Supreme Court has held that it also creates a common law cause of action for the injuries arising from the commission of a few well-recognized violations of international law, including, among others, piracy, offenses against ambassadors, and violation of safe conducts. *Sosa v. Alvarez-Machain*, 542 U.S. 692, 694 (2004). The TVPA adds to the list of historically recognized international law violations by establishing a cause of action for victims of torture.

4

28 U.S.C. § 1350.

The TVPA also contains an exhaustion requirement that provides, "A court shall decline to hear a claim under this section if the claimant has not exhausted adequate and available remedies in the place in which the conduct giving rise to the claim occurred." 28 U.S.C. § 1350. Several courts applying this requirement have held that the defendant has the burden of proving that domestic remedies exist in the plaintiff's home country. *See, e.g., Hilao v. Estate of Marcos*, 103 F.3d 767, 778 n.5 (9th Cir. 1996); *Sinaltrainal v. Coca-Cola Co.*, 256 F. Supp. 2d 1345, 1357-58 (S.D. Fla. 2003); *Wiwa*, 2002 WL 319887, *17; *Xuncax v. Gramajo*, 886 F. Supp. 162, 178 (D. Mass. 1995); *see also* S. Rep. No. 102-249, at 9-10 (1991), *reprinted in* 1991 WL 258662. If the defendant satisfies his burden, then the burden shifts to the plaintiff to show that "the local remedies were ineffective, unobtainable, unduly prolonged, or obviously futile." *See Wiwa*, 2002 WL 319887, at *17; S. Rep. No. 102-249, at 10.

In this case, Abubakar has put forth evidence that the plaintiffs failed to exhaust remedies in Nigeria. He points to the Nigerian constitution and other laws that provide a civil remedy for the acts of which plaintiffs complain. In response, the plaintiffs submit the 2000-2003 United States Department of State reports on Nigerian human rights practices. Judge Cudahy summarized these reports in his June 14, 2005, dissenting opinion in this case:[2]

> The facts of life shed some doubt on the . . . conclusion that African courtrooms would provide a more hospitable forum for these claims than those of Chicago. U.S. government sources reveal that from the year 2000, when Abubakar relinquished power, until 2003, when plaintiffs filed the instant suit, the Nigerian judiciary was under-funded, corrupt, subject to political influence and generally unable or unwilling to compensate victims of past human rights abuses. *See* United States Department of State, Nigeria:

---

[2] The majority's opinion noted that the TVPA's exhaustion requirement would apply but did not address the merits of the exhaustion issue.

5

> Country Reports on Human Rights Practices--2003 (February 25, 2004), §§ 1(e), 4; United States Department of State, Nigeria: Country Reports on Human Rights Practices--2000 (February 23, 2001), at §§ 1(e), 4.

*Enahoro*, 408 F.3d at 892.

The Court holds that the Department of State reports are sufficient to create a genuine issue of material fact – which must be resolved by a hearing – on the issue of whether the plaintiffs have satisfied the TVPA's exhaustion requirement. Because exhaustion is a matter to be determined by the Court, and not by a jury, *Hilao*, 103 F.3d at 778, the Court intends to conduct the necessary hearing before holding a trial in the case.

## Conclusion

For the foregoing reasons, the Court denies defendant's motion for summary judgment [docket no. 102]. Plaintiff Abiola is instructed to submit by January 6, 2006 documentation of her authority to sue on behalf of her parents' estates. The case is set for a status hearing on November 29, 2005 at 9:30 a.m. for the purpose of setting the date for the hearing on the exhaustion issue as well as a deadline for completing discovery.

        /s/ Matthew F. Kennelly
        MATTHEW F. KENNELLY
        United States District Judge

Date: November 8, 2005