# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| HAFSAT ABIOLA, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | Case No. 02 C 6093 |
| ) | |
| ABDUSALAMI ABUBAKAR, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

The plaintiffs, Hafsat Abiola, Anthony Enahoro, and Arthur Nwankwo, are citizens of Nigeria who allege that either they or their parents were tortured, for political reasons, by the military regime that formerly ruled Nigeria, allegedly at the behest of defendant Abdusalami Abubakar, a former member of the regime. They have sued the defendant under the Alien Tort Claims Act, 28 U.S.C. § 1350, and the Torture Victims Protection Act, 28 U.S.C. § 1350 note § 2(a).

In August 2005, the defendant moved for summary judgment, arguing that the "act of state" doctrine precludes American courts from adjudicating the dispute and that the plaintiffs had failed to exhaust available remedies in Nigeria, as required by the TVPA. In November 2005, the Court issued a ruling addressing the defendant's first contention. The Court noted that the act of state doctrine generally counsels that the courts of one country should not sit in judgment of the internal actions of the government of another country. *Abiola v. Abubakar*, No. 02 C 6093, 2005 WL 3050607, at *1 (N.D. Ill. Nov. 8, 2005) (*Abiola I*). Application of the

doctrine requires a court to assess a number of factors, including whether the activity in question is one about which the international community has formed a consensus, and whether resolving the case is likely to impact international relations. *Id.* at *2. The Court noted, first, that torture and government-sponsored extra-judicial murder – the activities challenged by the plaintiffs – have long been condemned by a strong international consensus. *Id.* The Court also noted that because the regime in question no longer existed, the likelihood of an impact on foreign relations was significantly reduced. *Id.* (citing *Banco Nacional de Cuba v. Sabbatino,* 376 U.S. 398, 428 (1964)). After considering the appropriate factors, the Court concluded that the act of state doctrine did not preclude consideration of the plaintiffs' case. *Id.*

With regard to defendant's TVPA / exhaustion of remedies argument, the Court determined that an evidentiary hearing was required. The Court held a hearing at which both sides called expert witnesses to testify and submitted numerous exhibits. After considering the evidence and the parties' arguments, the Court found that plaintiffs had satisfied their burden of proving that they did not have an adequate forum in Nigeria to pursue their claims. Specifically, the Court found that under Nigerian law, specifically the Public Officers Protection Act, a three-month statute of limitations governed the plaintiffs' claims because the claims are against a public official. *Abiola v. Abubakar*, 435 F. Supp. 2d 830, 837 (N.D. Ill. 2006) (*Abiola II*). At the time that period expired, the military regime that the plaintiffs allege committed the wrongs against them was still in power. Plaintiffs overwhelmingly established that during the time of that regime, military decrees barred Nigerian courts from calling into question the regime's actions, and that "even if a courageous judge might have proceeded despite the military decrees, ... the military routinely ignored any occasional judgments that may have been issued against the government." *Id.* The defendant offered no evidence that the three-month limitation period was

subject to extension, and no evidence that a Nigerian could have or would have extended the period in a case of this type. *Id.*

The defendant now asks the Court to certify its ruling on the exhaustion issue for interlocutory appeal under 28 U.S.C. § 1292(b).[1] Before the Court begins its analysis, we address the argument in the defendant's opening memorandum that he is entitled to an appeal as of right under the collateral order doctrine. Under this doctrine, a party can appeal immediately an order that "conclusively determine[s] a disputed question that is completely separate from the merits of the action [and is] effectively unreviewable on appeal from a final judgment." *See Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 711-15 (1996) (internal quotations omitted). Abubakar filed a notice of appeal, presumably on that basis, but the Court of Appeals has not yet decided whether it has jurisdiction to consider the appeal.

The Court of Appeals, not this Court, ultimately will decide whether our denial of summary judgment on the exhaustion issue falls within the parameters of the collateral order doctrine. The Court notes, however, that the Seventh Circuit has previously concluded that an interlocutory order turning on the issue of exhaustion of remedies is not normally appealable as of right. *See Davis v. Streekstra*, 227 F.3d 759, 762-63 (7th Cir. 2000) (finding that because "[e]xhaustion requirements do not create absolute (or even qualified) rights to be free from litigation," orders turning on exhaustion are not automatically appealable). That said, it is not

---

[1] In his opening memorandum, the defendant makes reference to the Court's decision on the act of state issue, but he has not sought certification of that decision for interlocutory appeal. Even had the defendant done so as part of his motion, however, the request would have come far too late. The Court's act of state ruling was made over ten months ago, on November 8, 2005. Abubakar had ample opportunity to file a section 1292(b) motion shortly after that decision, but he did not do so. *See Weir v. Propst*, 915 F.2d 283, 286-87 (7th Cir. 1990) (holding that a lower court should not have certified an interlocutory appeal six months after issuing its order because there was no justification for delay).

within our purview to determine whether Abubakar is entitled to take an interlocutory appeal as of right, and the Court therefore declines to comment further on the issue.

## Discussion

Before certifying a matter for interlocutory appeal, a court must find that "[its] order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b).

The first issue is whether the Court's ruling on the exhaustion issue turned on a controlling issue of law. In *Ahrenholz v. Bd. of Trustees of the Univ. of Ill.*, 219 F.3d 674 (7th Cir. 2000), the Seventh Circuit described the circumstances under which lower courts may properly certify an interlocutory appeal under section 1292(b). Specifically, the court admonished lower courts to consider carefully whether the decision under consideration turned on a question of law or a question of fact. It explained that section 1292(b)'s reference to "questions of law" was intended to limit certification of interlocutory appeals under that provision to matters like "a question of the meaning of a statutory or constitutional provision, regulation, or common law doctrine." *Id.* at 676.

The only issue of *American* law involved in the ruling under consideration concerned the burden of proof on the TVPA exhaustion issue. On that point, the parties were in agreement. Specifically, they agreed that the appropriate burden of proof was articulated in the Senate report that preceded the adoption of the TVPA. *See Abiola II,* 435 F. Supp. 2d at 835. Specifically, both the plaintiffs and the defendant agreed that the plaintiffs were required to present *prima facie* evidence of exhaustion of remedies in their home country (a burden ordinarily satisfied by the filing of suit in this country); the defendant had the burden of raising the affirmative defense

4

of non-exhaustion and pointing out the remedies that plaintiffs have not exhausted; and that the burden then shifted back to the plaintiffs to show that "'local remedies [are] ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile." *Id.* at 835-36 (quoting S. Rep. No. 102-249 at 9-10 (1991)). Because that legal issue was undisputed before this Court, it does not present an appropriate subject for an interlocutory appeal.

The underlying merits of the issue the Court addressed did not involve an issue of American law; rather, the defendant seeks to appeal the Court's determination that the plaintiffs had satisfied their burden of proving that they had no available remedy in Nigeria. Though that is, at one level, an issue of law (albeit Nigerian law), the Court based its decision on the persuasiveness and believability of the evidence – primarily, testimony by expert witnesses – that the parties presented. By way of example, a significant issue was whether the former Nigerian military regime would have permitted a case of this type to proceed, and whether it would have obeyed an adverse judgment. These were determinations based on a fact-intensive inquiry, including the relative persuasiveness of the expert testimony that the parties presented. Given this context, the decision that the defendant seeks to appeal did not involve a "question of law" in the way that one ordinarily would understand that term under section 1292(b).

Second, even if the decision under consideration involved a question of law within the meaning of section 1292(b), the issue is not one as to which there is a "substantial ground for difference of opinion," as section 1292(b) requires. As the Court noted in its ruling on the exhaustion issue, the evidence supporting the plaintiffs' claim of futility was overwhelming. At the hearing, the defendant did not seriously challenge the application of the POPA, and he did not offer evidence that the POPA's three-month limitation period could be avoided or extended.

In his reply brief on the section 1292(b) issue, the defendant argues, for the first time,

that our ruling on the application of the Nigerian POPA is somehow in conflict with our determination that the act of state doctrine does not apply. Despite the defendant's suggestion that the TVPA presents courts with a "juridical banana peel," Def. Reply at 5, it is the defendant who slipped while at the fruit market: he is comparing apples and oranges. The Court's ruling that the act of state doctrine did not bar the case was not based on a determination that the defendant was acting outside his capacity as a government official; indeed, the act of state doctrine applies only when the case involves the internal actions of a foreign government. *See Abiola I,* 2005 WL 3050607, at *1. For this reason, our decision, based on the evidence presented at the hearing on the exhaustion issue, that Nigeria's Public Officers Protection Act would apply to a suit by the plaintiffs in a Nigerian court was in no way contrary to our ruling that the act of state doctrine did not preclude the plaintiffs from pursuing their claims in this country under the TVPA. In any event, the defendant has forfeited his argument of inconsistency by failing to present it to this Court when it was considering the exhaustion issue, or on a timely request for reconsideration.

Third, allowing an interlocutory appeal would not "materially advance the ultimate termination of the litigation," as section 1292(b) requires. This case is already four years old in this Court – and that does not even count the time it was pending in the Eastern District of Michigan before it was transferred here. The defendant has been given every opportunity to obtain dismissal of the case on procedural and legal grounds, as well as on the exhaustion issue. At this point, it is time for the litigation to proceed ahead.

Allowing an interlocutory appeal on the exhaustion issue likely would add at least a year to the proceedings, and perhaps more, given the likelihood of a petition for certiorari. The Seventh Circuit has recognized that interlocutory appeals tend to cause unnecessary delays in

6

proceedings and waste judicial resources. *See Herdrich v. Pegram,* 154 F.3d 362, 368 (7th Cir. 1998) (citing *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 473-74 (1978)). Thus, the party seeking an interlocutory appeal must show that "'exceptional circumstances justify the departure from the basic policy of postponing appellate review until after the entry of final judgment.'" *Coopers & Lybrand,* 437 U.S. at 475 (quoting *Fisons Ltd. v. United States,* 458 F.2d 1241, 1248 (7th Cir. 1972)). The defendant has failed to make the necessary showing in this case. Certification of the Court's decision on the TVPA exhaustion issue "would prolong the life of the litigation at all the parties' expense, rather than streamlining proceedings. ... The defendants' claims of error are remediable on appeal." *Maljack Productions, Inc. v. Survival Anglia Ltd.,* No. 97 C 789, 1999 WL 182154, *4 (N.D. Ill. Mar. 24, 1999).

For these reasons, the Court determines that this is not an appropriate case for certification of an interlocutory appeal under section 1292(b) and therefore denies the defendant's request for certification.

Though we have resolved the defendant's request for certification, it is important to address several arguments he has made that are based on a misreading of the Court's ruling on the exhaustion issue. Specifically, Abubakar attacks the Court's decision as being based primarily on the United States Department of State Country Reports on Nigeria, sources that Abubakar describes as "rank hearsay of questionable admissibility." Def. Reply at 4. This argument is a fairly blatant misrepresentation of the Court's ruling, but to the extent that the matter might be said to be unclear, the Court clarifies it here. The Court ruled that the "overwhelming evidence" – the expert testimony and the exhibits presented at the hearing, *not* including the Country Reports – demonstrated that because of decrees issued by the former military regime, the plaintiffs could not have brought their claims in Nigeria during the

limitations period established by the POPA. *See Abiola II,* 435 F. Supp. 2d at 837. Contrary to the defendant's assertion that "State Department Report[s] carried the day," Def. Reply at 5, the Court's reference to the United States Department of State Country Reports was made only as an alternative basis for our ruling. *See Abiola II,* 435 F. Supp. 2d at 837. It is also noteworthy that despite his disparagement of the State Department's reports, at the hearing the defendant "hardly attempted to question the reports' conclusions with evidence other than his expert's unsupported assertions." *Id.* at 837.

The defendant also makes the unsupported contention that "the standards of evidentiary analysis [the Court] used to determine that Nigeria did not have [an] adequate remedy are such that all African countries would likely fail the test while all European countries would pass it." Def. Mot. to Stay at 8. The defendant claims that our supposedly inequitable treatment of African nations has caused "the potential for riots and social uprising" threatening "[t]he fate of the entire country of Nigeria." *Id.* at 9. But the defendant has provided no competent evidence supporting his wildly hyperbolic contentions. First, he has not even made an effort to describe how the Court's application of the TVPA's exhaustion requirement would impact some other TVPA case involving actions of a foreign government other than the former Nigerian military regime.[2] The defendant has also presented no evidence whatsoever supporting his wild claim that the Court's decision will lead to violence in Nigeria, let alone the country's downfall. The only "evidence" he has submitted are articles from Nigerian newspapers that discuss the case. These articles provide no indication that the Court's decision has triggered riots or uprisings or is

---

2 Presumably the same result would obtain in any TVPA case in which the plaintiff could show that the government that conducted torture – in whatever country or continent – had prevented its victims from obtaining a legal remedy.

likely to do so. There may have been some press commentary disagreeing with our ruling and some that misunderstood our ruling or the status of the case – neither of which is uncommon in this or any other country – but that is far from evidence that rioters are or will be assembled at the barricades.[3]

The defendant has also renewed an argument that he has made throughout this litigation – that it is inappropriate for American courts to assert jurisdiction over legal disputes between non-citizens regarding actions that occurred in a foreign nation. In *Abiola II*, the Court expressed discomfort about adjudicating claims that ask us to pass judgment on the adequacy of the legal remedies available in another country. The Court recognized, however, that within our system of government, a court's role is to enforce "the law as it is, not as one might like it to be." *Abiola II,* 435 F. Supp. 2d at 832. In short, the defendant's argument is misdirected. The power to change the laws of this country, including the TVPA, lies with Congress, not the courts. To return to the defendant's banana peel metaphor, if the defendant is concerned that applying the TVPA as it was written may cause the courts to slip and fall, he should address his concern to Congress.

Finally, the Court takes offense at the defendant's suggestion that we have determined

---

[3] The defendant appears to be somewhat misguided about what constitutes appropriate evidence. In arguing that this lawsuit will lead to negative consequences in Nigeria, the defendant also accuses the plaintiffs of filing this action to further their political aspirations in that country. This argument is irrelevant to any issue before the Court on the section 1292(b) issue. The Court notes, however, that the defendant supports his argument by what he calls "Googleable evidence." It is true that Google has become so ubiquitous that it has been included in the *Oxford English Dictionary*, *see* http://dictionary.oed.com/cgi/entry/20003031?query_type=word &queryword=google&first=1&max_to_show=10&sort_type=alpha&result_place=2&search_id= zPns-Vb3S8o-11652&hilite=20003031 (last updated June 2006), but it has not changed the Federal Rules of Evidence. Information that is supported by nothing more than a Google reference does not pass muster.

that Nigerian judges "are corrupt and inept." *See* Def. Reply at 2. That is, quite simply, not so. Our ruling on the exhaustion issue concerned steps the former Nigerian military regime took to present Nigerian judges from doing their job. The Court has in no way, shape, or form concluded that Nigerian judges are anything other than honorable.

**Conclusion**

For the reasons discussed above, the Court denies the defendant's motion for certification of an interlocutory appeal under section 1292(b) as well as his motion for stay pending appeal [docket no. 184].

_____
MATTHEW F. KENNELLY
United States District Court

Date: September 20, 2006